VENTERS, J.,
DISSENTING:
The majority opinion unnecessarily permits motor vehicle reparation obligors (car insurance companies) to withhold payments of basic reparation benefits (BRB) until passengers injured in vehicular colli *69 sions agree to submit to a formal interrogation under oath. I believe that is contrary to the letter and purpose of the Kentucky Motor Vehicle Reparations Act and so I dissent.
Of course, no one including myself suggests that State Farm should accede to dubious claims without question. But the majority seems to have overlooked the fact that several weeks after the alleged accident, long after suspicions about the claims arose, and for more than an hour, Ronie-sha and Barry Adams freely and comprehensively answered every question posed by State Farm’s claims investigator; and, they did so knowing they were being recorded. The transcripts of those examinations cover twenty-nine pages in a relatively small font. Roniesha and Barry each attested on the recording to the truthfulness of all their answers, satisfying any good faith need of State Farm’s for any claims adjustment information possessed by the Adamses which could not be otherwise obtained from medical records available to State Farm.
As passengers in a motor vehicle owned and insured by another person, Roniesha and Barry Adams had a statutory right to the basic reparation benefits created by the Kentucky General Assembly. KRS 304.39-030 provides “every person suffering loss from injury arising out of maintenance or use of a motor vehicle [who has not expressly rejected the protection of the statute] a right to basic reparation benefits.” State Farm has no authority to subordinate those statutory rights to a policy-provision to which the Adamses never assented. To the contrary, State Farm and the other insurance companies that opt to sell motor vehicle insurance in Kentucky obligate themselves to provide BRB without unreasonable interference. The Adamses did not waive or forfeit their statutory right to BRB by riding in a car insured by State Farm.
State Farm exercised its reasonable opportunity to question the Adamses about the incident, and the Adamses fully cooperated. If doubts or suspicions persisted about the validity of their claims, State Farm had every right to seek the approval of a court to withhold payments or to authorize further investigation, but it failed to do so. Instead, State Farm shifted the burden to the injured claimant to sue for benefits or do without, an outcome the Motor Vehicle Reparations Act was expressly designed to eliminate.
KRS 304.39-010 provides that the Motor Vehicle Reparations Act was adopted to effect the following purposes:
[[Image here]]
(2) To provide prompt payment to victims of motor vehicle accidents without regard to whose negligence caused the accident ...;
(3) To encourage prompt medical treatment and rehabilitation of the motor vehicle accident victim by providing for prompt payment of needed medical care and rehabilitation;
[[Image here]]
(5) To reduce the need to resort to bargaining and litigation through a system which can.pay victims of motor vehicle accidents without the delay, expense, aggravation, inconvenience, inequities and uncertainties of the liability system.
As for the suspicions raised about their claims, it is worth noting that after Milton Mitchell, the policyholder and driver of the vehicle, submitted to State Farm’s demand for a formal interrogation, as he was contractually bound to do, State Farm resolved its suspicions in favor of coverage, and it paid Mitchell’s claims. Since State Farm acknowledged its coverage obli *70 gation by paying Mitchell, the only possible purpose for, and the certain effect of, State Farm’s demand to further interrogate the Adamses was intimidation.
The majority opinion strays from the policy and purpose of the statutory rights provided by the Kentucky Motor Vehicle Reparations Act and allows automobile insurers to impose unauthorized barriers to payment of basic reparation benefits. -1 would affirm the decision of the Court of Appeals. Accordingly, I dissent.
Wright, J., joins.